**Harold RUTH, Plaintiff-Appellee,**

v.

**BITUMINOUS CASUALTY CORPORATION, Defendant-Appellant.**

**No. 19641.**

United States Court of Appeals, Sixth Circuit.

Feb. 19, 1970.

Rehearing Denied June 11, 1970.

---

Buell Doelle, and Harry M. Nayer, Detroit, Mich., for appellant, Vandeveer, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., on brief.

Ernest Goodman, Detroit, Mich., for appellee, Goodman, Eden, Robb, Millender, Goodman & Bedrosian, Richard M. Goodman, James A. Tuck, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and WEINMAN,* District Judge.

PHILLIPS, Chief Judge.

This is an appeal by the workmen's compensation insurance carrier, Bituminous Casualty Corporation (Bituminous Casualty), from a judgment in the District Court in favor of the insured company's injured employee, Harold Ruth, for $100,000.

In 1963 Ruth was injured in the course of his employment at the Hogart Manufacturing Co. (Hogart), while operating a press manufactured by the predecessor of the E. W. Bliss Co. (Bliss). Bituminous Casualty was the workmen's compensation carrier of Hogart, the employer, and it paid Ruth's claim of $14,612.38 under the Michigan Workmen's compensation statute.

In 1965 Ruth filed suit against Bliss alleging negligence and breach of warranty in the manufacture of the press. Thereafter, Bituminous Casualty sought to intervene as a party plaintiff and was granted leave to do so. It filed its complaint against Bliss in August 1965.

In May 1968 the District Court granted Ruth leave to file an amended com-

---

* Honorable Carl A. Weinman, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

plaint against the intervening plaintiff, Bituminous Casualty. On the day before the trial, February 5, 1969, the actions against Bliss were dismissed, leaving Bituminous Casualty in the posture of a defendant under the amended complaint of Ruth.

In his amended complaint Ruth alleged that the safety inspectors of Bituminous Casualty were negligent in failing to recommend certain improvements in the press he operated, which they had inspected as part of the insurance company's safety inspection program. There is evidence from which the jury could have found that safety engineers of Bituminous Casualty had made safety inspections of Hogart's plants routinely and systematically from 1960 to the date of Ruth's injury. These included inspection of the press which injured Ruth. There was a total of 16 or 17 separate inspections. Based upon these inspections, Bituminous Casualty made safety recommendations to Hogart, which was a small company without a safety program or safety engineers of its own. There is evidence that Hogart relied upon and consistently complied with the safety recommendations made by Bituminous Casualty.

The press which injured Ruth was built with six windowlike openings in the outer frame. Each opening was approximately one foot square. The machine is described in appellant's brief as "an antiquated Toledo Toggle Press, built in 1913." Ruth's job required him to stand directly at the rear of the press and remove materials after each cycle of the machine. The machine contained a heavy duty steel ram which descended in response to an electrically actuated single foot pedal operated by another employee located at the front of the machine. Ruth suffered injury when his left fingers protruded through one of these openings during the circle of the ram and were sheared by the descending ram. He suffered a traumatic amputation of three fingers on his left hand and injury to his left index finger.

Bituminous Casualty urges that under the third party provision of the Michigan workmen's compensation act (Mich. Stats.Ann. § 17.189) [Comp.Laws 1948, § 413.15, Pub.Acts 1952, No. 155] an employee cannot maintain an action against the employer's insurance carrier. It further is urged that the decision of the District Court in interpreting the law of Michigan impaired contractual obligations in violation of Article 1, § 10 of the Constitution of the United States.

■ In this action based on diversity of citizenship we must follow the law of the State of Michigan, since it is the law applicable to the controversy, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; O'Brien v. Willys Motors, Inc., 385 F.2d 163 (6th Cir.). It has been said that only the law as expressed by the highest court of a State is binding on this Court in a diversity action. See Hochevar v. Maryland Casualty Co., 114 F.2d 948, 951 (6th Cir.). However, where the highest court of the State has not spoken, this Court is obligated to follow published intermediate state appellate court decisions unless we are convinced that the highest state court would decide differently. Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284; American Fidelity & Cas. Co. v. Indemnity Ins. Co. of No. Amer., 308 F.2d 697 (6th Cir.), cert. denied, 372 U.S. 942, 83 S.Ct. 935, 9 L.Ed.2d 968; John Hancock Mut. Life Ins. Co. v. Tarrence, 244 F.2d 86, 87 (6th Cir.).

■ In the case at bar the Michigan Supreme Court has not decided the question at issue, namely whether an employee may sue the workmen's compensation insurance carrier under the Michigan third party statute, Mich. Stats.Ann. § 17.189. The Michigan Court of Appeals, however, has held that such suits are permissible. Ray v. Transamerica Insurance Corp., 10 Mich. App. 55, 158 N.W.2d 786, leave to appeal denied, 381 Mich. 766. In *Ray* the Court of Appeals expressly declined to follow the decision of this Court in Ko-

tarski v. Aetna Casualty & Surety Co., 372 F.2d 95, affirming 244 F.Supp. 547, which had held that such employee suits were not maintainable under the statute. Bituminous Casualty places heavy reliance upon the italicized portion of the following statement in Currier Lumber Co. for Use and Benefit of Fidelity & Casualty Co. of New York v. Van Every, 312 Mich. 375, 386, 20 N.W.2d 241, decided in 1945:

> "The objective sought * * * is to afford a right in court to seek recovery by one who pays compensation under the act, from another, *a third person who was not a party in the proceedings before the department.*" (Italics supplied.)

When considered in context, this statement is not the significant authority appellant asserts. The Supreme Court of Michigan was speaking there of the right of one claiming liability, and his day in court, against one who owes an indemnity. We do not read this case as authority for the contention that no action can be maintained against the employer's insurance carrier.

We have reviewed the other decisions of the Supreme Court of Michigan relied upon by appellant. While they may contain some language favorable to appellant, we do not find any clear indication that the Court of Appeals of Michigan decided *Ray* erroneously, or that *Ray* is contrary to previously enunciated decisions of the Supreme Court of Michigan. If the law of Michigan is uncertain in this area, or if *Ray* is inconsistent with previous decisions of the Supreme Court of Michigan, that Court had an opportunity to clarify this issue in its review of *Ray*. The court denied leave to appeal from the decision of the State Court of Appeals. 381 Mich. 766. We are not convinced that the Supreme Court of Michigan would reach a conclusion different from that reached by the State Court of Appeals. For that reason we decline in the present case to follow the *Kotarski* decision of this Court.

 Bituminous Casualty contends that the judgment of the District Court impairs contract obligations in violation of Art. 1 § 10 of the Constitution. We find this contention to be without merit. Barrows v. Jackson, 346 U.S. 249, 260, 73 S.Ct. 1031, 97 L.Ed. 1586; Tidal Oil Co. v. Flanagan, 263 U.S. 444, 451, 44 S.Ct. 197, 68 L.Ed. 382; Cross Lake Shooting & Fishing Club v. Louisiana, 224 U.S. 632, 638, 32 S.Ct. 577, 56 L.Ed. 924.

All the arguments submitted by appellant have been considered and likewise are found to be without merit.

Affirmed.